**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| TSI, Incorporated, a Minnesota Corporation,<br><br>Plaintiff,<br><br>v.<br><br>Azbil BioVigilant, Inc., a Delaware Corporation,<br><br>Defendant. | No. CV12-0083-PHX-DGC<br><br>**ORDER** |

Defendant Azbil BioVigilant, Inc. has filed a motion to dismiss Plaintiff TSI, Incoporated's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Doc. 22. The motion is fully briefed. Docs. 22, 23, 24. Neither party has requested oral argument. For the following reasons, the Court will deny the motion.[1]

**I.    Background.**

On December 14, 2004, the United States Patent and Trademark Office issued U.S. Patent No. 6,831,279 (the "'279 patent"), entitled "Laser Diode-Excited Biological Particle Detection System." Doc. 20, ¶ 11. Plaintiff has acquired all rights, title, and interest in the '279 patent through assignment from Canada. These rights include the

---

[1] Defendant previously filed a motion to dismiss (Doc. 15), after which Plaintiff filed an amended complaint (Doc. 20). Defendant's initial motion to dismiss (Doc. 15) is denied as moot. *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992) (an amended complaint supersedes the original complaint, and after amendment, the court will treat the original complaint as nonexistent).

rights to sue for past infringement and to all damages for past infringement of the '279 patent. *Id.* at ¶ 12. Plaintiff makes and sells biological particle detection systems embodied by the '279 patent, and marks its products with the patent, in compliance with 35 U.S.C. § 287(a). *Id.* at ¶¶ 14, 15.

Defendant was given actual notice of the '279 patent by a letter dated June 6, 2006. *Id.* at ¶ 16. Defendant markets and sells biological particle detection systems. *Id.* at ¶ 20. Defendant's customers include pharmaceutical and medical device companies in the United States, but these customers are not publicly identified. *Id.* Plaintiff denied Defendant a license to the '279 patent. *Id.* at ¶ 19.

Plaintiff claims that Defendant has directly infringed on the '279 patent, in violation of 35 U.S.C. § 271(a). *Id.* at ¶ 22. Plaintiff also claims that Defendant has indirectly infringed on the '279 patent by inducement, in violation of 35 U.S.C. § 271(b), and by contributory infringement, in violation of 35 U.S.C. § 271(c). *Id.* at ¶¶ 23, 24. Plaintiff asks the Court to enter judgment that Defendant has willfully infringed the '279 patent in violation of 35 U.S.C. § 271, to enjoin Defendant from the patent infringement, and to award enhanced damages and attorneys' fees. *Id.* at 6-7.

**II. Legal Standard.**

When analyzing a complaint for failure to state a claim to relief under Rule 12(b)(6), the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009) (citation omitted). Legal conclusions couched as factual allegations are not entitled to the assumption of truth, *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009), and therefore are insufficient to defeat a motion to dismiss for failure to state a claim, *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1108 (9th Cir. 2010) (citation omitted). To avoid a Rule 12(b)(6) dismissal, the complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949

(quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

### III. Discussion.

Defendant challenges the sufficiency of Plaintiff's indirect infringement claims under §§ 271(b) and (c).[2] Doc. 22, at 4. Specifically, Defendant argues that Plaintiff has not pled direct infringement by a third party, how the third party has directly infringed, and how Defendant induces or contributes to the infringement. *Id.* at 2.

### A. Direct Infringement by a Third Party.

As the first step toward establishing Defendant's vicarious liability under either an active inducement of infringement or contributory infringement theory, Plaintiff must prove direct infringement of the '279 patent. *See Joy Tech., Inc. v. Flakt, Inc.*, 6 F.3d 770, 774 (Fed. Cir. 1993); *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1274 (Fed. Cir. 2004); *Carborundum Co. v. Molten Metal Equip. Innovations, Inc.*, 72 F.3d 872, 876 n.4 (Fed. Cir. 1995) ("Absent direct infringement of the claims of a patent, there can be neither contributory infringement nor inducement of infringement."). Plaintiff alleges that the third parties who are directly infringing the '279 patent are Defendant's customers "that include, for example, companies in the pharmaceutical and medical device industries in the United States." Doc. 20, ¶ 20. Defendant "does not publicly identify its customers; a reasonable opportunity for discovery is therefore needed in order to identify [Defendant's] customers by name." *Id.* Plaintiff claims that Defendant's customers directly infringe the '279 patent by using Defendant's systems. *Id.* at ¶¶ 23, 24.

---

[2] Defendant does not challenge the section 271(a) direct infringement claim. Doc. 24, at 3 n.1.

Defendant argues that Plaintiff must identify at least one third party who directly infringes the '279 patent.³ Doc. 22, at 4. Defendant cites *Joy Technologies* and *Arris Group*, but neither of these cases requires identification of third party infringers by name. *See Joy Tech.*, 6 F.3d 770; *Arris Grp., Inc. v. British Telcomm. PLC*, 639 F.3d 1368 (Fed. Cir. 2011). "A defendant's liability for indirect infringement must relate to the identified instances of direct infringement." *Dynacore*, 363 F.3d at 1274. "Plaintiffs who identify *individual* acts of direct infringement must restrict their theories of vicarious liability – and tie their claims for damages or injunctive relief – to *the identified act*." *Id.* (emphasis in original). "Plaintiffs who identify an entire category of infringers (e.g., the defendant's customers) may cast their theories of vicarious liability more broadly, and may consequently seek damages or injunctions across the entire category." *Id.* Here, Plaintiff permissibly identified a category of infringers: Defendant's customers, including companies in the pharmaceutical and medical device industries in the United States.

Defendant also argues that Plaintiff must set forth facts indicating *how* Defendant's customers directly infringed, and that mere "use" of Defendant's systems is insufficient to establish direct infringement. Doc. 22, at 2, 4. Defendant relies primarily on *DR Systems*, in which the plaintiff accused the defendant of "knowingly and intentionally induced infringement" through "the sale, offer for sale, and importation" of the accused medical imaging systems, with the direct infringers including "the physicians who use [the defendant's] infringing medical imaging systems." *DR Systems, Inc. v. Avreo, Inc.*, No. 11-cv-0932 BEN (WVG), 2011 WL 4850171, at *3 (S.D. Cal. Oct. 12, 2011). The court concluded that the plaintiff had not alleged any facts "concerning how [the defendant] induced the physicians' direct infringement of the medical imaging systems." *Id.* The court took no issue, however, with the physicians' use of the accused

---

³ Defendant later appears dismissive of this argument. *See* Doc. 24, at 8 ("[Plaintiff] spends most of its brief debating whether it needs to specifically identify [Defendant's] customers by name. . . . The issue is not whether [Plaintiff] must identify a third party infringer by name, but rather whether [Plaintiff's] indirect infringement claims are 'enough to raise a right to relief above the speculative level.'") (quoting *Twombly*, 550 U.S. at 555).

systems as being insufficient to constitute direct infringement. Furthermore, section 271(a) provides that "whoever without authority makes, *uses*, offers to sell, or sells any patented invention, within the United States . . . infringes the patent." 35 U.S.C. § 271(a). Because the definition of direct infringement includes the use of an accused system, and because Plaintiff has not provided any authority to the contrary, the Court concludes that Plaintiff has sufficiently pled direct infringement by a third party.

### B.     Inducement of Infringement.

Section 271(b) provides that "[w]hoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b). "[I]nducement requires that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement." *Wordtech Sys., Inc. v. Integrated Networks Solutions, Inc.*, 609 F.3d 1308, 1315 (Fed. Cir. 2010) (quoting *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) (en banc)). Plaintiff alleges that, "by marketing and selling its biological particle detection systems, [Defendant] has encouraged and is encouraging its customers to use its biological particle detection systems and, thus, to directly infringe the '279 patent. This is also shown from [Defendant's] website, which, for example, advertises [Defendant's] systems as rapid biological detection systems that allow the user to detect the intrinsic fluorescence of airborne particles." Doc. 20, ¶ 23.

Defendant argues that Plaintiff has not demonstrated *how* it induced infringement merely by alleging that Defendant markets and sells the systems at issue. Doc. 22, at 5. Defendant again relies on *DR Systems*, but Plaintiff alleges more than the "sale" or "offer for sale" of the accused systems. *Cf. DR Systems*, 2011 WL 4850171, at *3. Plaintiff claims that Defendant has advertised the accused systems on its website as "rapid biological detection systems." Doc. 20, ¶ 23. "[L]iability for active inducement may be found 'where evidence goes beyond a product's characteristics or the knowledge that it may be put to infringing uses, and shows statements or actions directed to promoting infringement.'" *Ricoh Co., Ltd. V. Quanta Computer Inc.*, 550 F.3d 1325, 1341 (Fed.

Cir. 2008) (quoting *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 935 n.10 (2005) (stating that this reasoning applies to § 271(b)). As the Supreme Court explained in *Grokster* in the context of infringement under copyright laws, "[e]vidence of active steps . . . taken to encourage direct infringement, such as advertising an infringing use or instructing how to engage in an infringing use, show an affirmative intent that the product be used to infringe." *Grokster*, 545 U.S. at 936. Defendant's advertisement of the accused systems on its website directly promotes use of Defendant's product in an infringing manner. *See Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus.*, 145 F.3d 1303, 1312 (Fed. Cir. 1998) (affirming holding that advertisements of infringing device induced others to infringe).

Defendant points to Claim 20 of the '279 patent, which "requires the end user (e.g., a customer) to analyze a particle . . . and then make a determination as to 'whether that particle is biologically viable.'" Doc. 22, at 5 (citation omitted). Defendant claims that Plaintiff has not pled any facts that Defendant's customers ever make this determination with Defendant's systems. *Id.* at 6. To the contrary, Plaintiff has alleged that Defendant's customers directly infringe "by using such biological particle detection systems, which are embodiments of the '279 patent," and that Defendant markets its systems as "rapid biological detection systems that allow the user to detect the intrinsic fluorescence of airborne particles." Doc. 20, ¶ 23. While this language may not mirror the language in Claim 20, Defendant's website advertising is still relevant as evidence of its intent to induce infringement. *See Ricoh*, 550 F.3d at 1342 ("That the presentation may have failed to communicate any information regarding the patented methods or the possibility of infringement does not render it irrelevant as evidence of [Defendant's] intent."). To the extent that Defendant cites Claim 20 to show that its customers used its systems for a purpose other than what is protected by the '279 patent, the Court will address that argument at the summary judgment stage with the benefit of further factual development.

Finally, Plaintiff has alleged sufficient facts to show that Defendant "knowingly induced" infringement by its customers. *Wordtech*, 609 F.3d at 1315. Plaintiff claims that "[Defendant] was given actual notice of the '279 patent by a letter dated June 6, 2006," and that Defendant previously sought a license to the '279 patent. Doc. 20, ¶¶ 16, 19. Construing the facts in the light most favorable to Plaintiff, the Court concludes that Plaintiff has pled enough facts to show that Defendant knew of the '279 patent and took active steps to induce infringement. The Court will deny Defendant's motion to dismiss the section 271(b) inducement of infringement claim.

### C.     Contributory Infringement.

Section 271(c) provides:

> Whoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer.

35 U.S.C. § 271(c). Under this section, a party who sells a component with knowledge that the component is especially designed for use in a patented invention, and is not a staple article of commerce suitable for substantial noninfringing use, is liable as a contributory infringer. *Wordtech*, 609 F.3d at 1316; *see Ricoh*, 550 F.3d at 1337. To establish contributory infringement, a plaintiff must show the following elements: (1) that there is direct infringement, (2) that the accused infringer had knowledge of the patent, (3) that the component has no substantial noninfringing uses, and (4) that the component is a material part of the invention. *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010).

As discussed above, Plaintiff has sufficiently pled that Defendant's customers directly infringed by using Defendant's systems and that Defendant had knowledge of the

patent.[4]  *See* Doc. 20, ¶¶ 16, 18, 24.  Defendant does not initially challenge the third and fourth elements of Plaintiff's contributory infringement claim (*see* Doc. 22), but waits until its reply to do so (*see* Doc. 24, at 9 (arguing that Plaintiff has not alleged that Defendant's biological detection systems constitute a material part of the '279 patent, that Defendant knew its systems were especially made or adapted for use to infringe the '279 patent, and that Defendants' systems are not suitable for substantial non-infringing use, to make a claim for contributory infringement)).  It is well established, however, that "courts will not consider arguments raised for the first time in a reply brief." *Bach v. Forever Living Prod. U.S., Inc.*, 473 F. Supp. 2d. 1110, 1122 n.6 (9th Cir. 2007); *Lentini v. Cal. Ctr. for the Arts, Escondido*, 370 F.3d 837, 843 n.6 (9th Cir. 2004).  The Court will deny the motion to dismiss the section 271(c) contributory infringement claim.

**IT IS ORDERED:**

1. Defendant's initial motion to dismiss (Doc. 15) is **denied** as moot.
2. Defendant's motion to dismiss the first amended complaint (Doc. 22) is **denied**.
3. The Court will schedule a case management conference by separate order.

Dated this 1st day of May, 2012.

David G. Campbell
United States District Judge

---

[4] Plaintiff must ultimately show that Defendant knew that its systems were "both patented and infringing." *Fujitsu*, 620 F.3d at 1330 (quoting *Golden Blount, Inc. v. Robert H. Peterson Co.*, 365 F.3d 1054, 1061 (Fed. Cir. 2004)).